UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY SORRELL, <br><br> Plaintiff, <br><br> v. <br><br> JULIO GARCIA, et al., <br><br> Defendants. | No. 24 CV 3099 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy Sorrell contacted the University Park Police Department for help removing his son from his home. Because of earlier incidents at the Sorrell home, two University Park police officers were dispatched to the scene. Defendant Donald Cunningham arrived first and entered the home. But Sorrell said that he did not want defendant Julio Garcia to enter his property. Sorrell and Cunningham argued, and the parties disagree over what happened next. What is undisputed, however, is that just over a minute after Cunningham entered Sorrell's home, he had handcuffed him and placed him under arrest. Sorrell brings suit under 42 U.S.C. § 1983 against defendants Garcia and Cunningham for excessive force, wrongful detention, and unlawful entry. He also brings a state-law malicious prosecution claim against defendants Garcia, Cunningham, and the Village of University Park. For the reasons discussed below, summary judgment is granted in part, denied in part.

I.  **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). I may consider materials that are in the record even if not cited by the parties. Fed. R. Civ. P. 56(c)(3).

II.  **Facts**

A.  **Lead Up to January 2024**

Plaintiff Jimmy Sorrell knew both defendant officers before the arrest at issue in this case. Sorrell's son has "somewhat severe" mental health issues. [32-2] at 16:15–19.[1] At times, Sorrell's son became violent, including incidents where he broke Sorrell's ribs and fractured his face. [32-2] at 29:2–11. On over ten occasions, Sorrell

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page and line numbers. Citations to video recordings use the minutes and seconds according to the digital file uploaded to the docket.

called the University Park police to have the paramedics come and take his son away. [32-2] at 18:21–19:9.

On one of these occasions, Officer Cunningham was the responding officer and got into a physical altercation with Sorrell's son. [31] ¶ 10. As a result, two University Park police officers began responding to calls at Sorrell's house. [31] ¶ 10.

Before January 2024, Sorrell had also interacted with Officer Garcia. [37] ¶¶ 25–26. Unlike Cunningham, who Sorrell has known for years and who had helped Sorrell in the past, [21-2] at 1:30–37, Sorrell's previous interactions with Garcia had been negative: Sorrell had filed a Citizen's Complaint against Garcia, [32-5] at 2, and called the police four or five times to complain about Garcia. [32-2] at 42:8–11. As a result, Sorrell would not allow Garcia inside his house. [31] ¶ 13.

### B.  January 17, 2024

Officer Cunningham was wearing a body-worn camera on January 17, 2024, which recorded his interactions with Sorrell. [21-2]. Officer Garcia was also wearing a body-worn camera, but the image is obstructed at times. [32-1]; [34].

On January 17, 2024, Sorrell called the University Park Police Department because he wanted his son to be taken to the hospital for medication. [32] ¶ 1. Officers Cunningham and Garcia were dispatched to the scene. [32] ¶ 2. Cunningham arrived first and Sorrell allowed him to enter his home. [32] ¶ 2. Upon Cunningham's arrival, no one inside the home was noticeably combative or injured. [32] ¶ 3. Sorrell's son was sitting at the top of the stairs and Sorrell's wife was also upstairs. [21-2]. Sorrell asked whether Cunningham knew that Garcia was not allowed in or around his home.

3

[21-2] at 1:03–07. Cunningham replied that Sorrell had no say about that, [21-2] at 1:07–10, at which point Sorrell said he needed Cunningham to leave his house "right now." [21-2] at 1:10–12. Sorrell proceeded to repeat that "Garcia is not allowed in my house" and that he changed his mind about wanting the officers' help. [32] ¶¶ 12–13.

The parties dispute what came next and what the video depicts. Sorrell recalls that he grabbed the glass storm door handle and tried to lock it before Garcia could enter his home. [32] ¶ 14. Sorrell further explains that as he grabbed the handle, Cunningham grabbed and twisted his arm, pushed him, and called him a "mother fucker." [32] ¶ 15. Sorrell insists that he never initiated contact with Cunningham. [32] ¶ 15; [32-2] at 77:6–23; [32-2] at 80:5–11. Sorrell also alleges that Garcia bent his wrist backwards as part of the handcuffing, [32] ¶ 18, and implies that Garcia had knowledge of Sorrell's preexisting shoulder problems. [32] ¶ 20.

Defendants say the video depicts Sorrell as the aggressor. They argue that Sorrell "aggressively approached the door," that Cunningham merely "placed his arm out in front of [Sorrell]," and that Sorrell "then pushed Officer Cunningham's arm away." [37] ¶ 15. Defendants deny that Sorrell did not initiate the contact, [37] ¶ 15, and instead claim that Sorrell "repeatedly shoved Officer Cunningham." [21] at 4. Defendants also assert that Sorrell was "charging at Officer Garcia" as he opened the screen door. [31] ¶ 18. Defendant Garcia denies knowing that Sorrell had prior shoulder surgery. [37] ¶ 20.

4

Both parties agree that Sorrell did not resist arrest. [32] ¶ 21. The time between Cunningham entering Sorrell's house and calling him a "mother fucker" and placing him under arrest was just over one minute. [21-2].

After being handcuffed, Sorrell continued telling Garcia that he needed to leave his home. [21-2] at 2:30–40. By this point, Sorrell's wife had appeared on the stairs. Cunningham asked her if her son needed paramedics. [21-2] at 2:59. After Garcia escorted Sorrell out of the house, Cunningham remained inside and again asked Sorrell's wife whether she needed the paramedics. [21-2] at 3:50–4:06. After Sorrell's wife said no, Cunningham exited the house, but then returned to explain the situation to her and once again confirm she did not want paramedics. [21-2] at 4:06–5:06.

Sorrell brings claims for excessive force, wrongful detention, and unlawful entry against Garcia and Cunningham. He also brings a state-law malicious prosecution claim against Garcia, Cunningham, and the Village of University Park. [18] ¶¶ 25–55.

### III. Analysis

#### A. Wrongful Detention and Malicious Prosecution

"The existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims." *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). While the "probable-cause standard inherently allows room for reasonable mistakes," *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013), the probable cause determination must be made by a jury where there is room for a difference of

5

opinion concerning the facts or the reasonable inferences to be drawn from them. *See Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008).[2] Here, the parties disagree over whether Officer Cunningham had probable cause to arrest Sorrell.

Defendants argue that the body-worn camera depicts Sorrell "aggressively charging towards Officer Garcia" and making physical contact with Officer Cunningham. [21] at 6. As a result, defendants argue, they "had ample probable cause to arrest the Plaintiff for aggravated battery," which would entitle them to summary judgment on Counts II and III. [21] at 6.

"The existence of probable cause … depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715. Under Illinois law, a person commits battery if he knowingly without legal justification "makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a)(2). When the battered individual is a peace officer performing his official duties, Illinois law elevates the offense to aggravated battery. 720 ILCS 5/12-3.05(d)(4)(i).

Illinois follows the common-law rule that any contact, however slight, may constitute a battery. *Garcia-Meza v. Mukasey*, 516 F.3d 535, 538 (7th Cir. 2008). Further, "[w]hether the physical contact was intentional does not impact the existence of probable cause." *Gill v. Vill. of Melrose Park*, 35 F.Supp.3d 956, 964 (N.D.

---

[2] Defendants do not invoke qualified immunity in their briefs. *See* [21] at 4–6; [36]. Therefore, I do not consider whether *arguable* probable cause may have existed even in the absence of probable cause. *See Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655–56 (7th Cir. 2024).

6

Ill. 2014). But this principle is not categorical. *See London v. Harris*, 2013 WL 1405250, at *6 (N.D. Ill. Apr. 5, 2013). In ascertaining whether a battery has occurred, Illinois courts have distinguished between "an intentional act by an agitated defendant" and "an incidental or reflexive one." *See, e.g.*, *People v. Pruitt*, 2021 WL 3737191, at *15 (Ill. App. Ct. Aug. 24, 2021).

When video footage "firmly settles a factual issue," a court "will not indulge stories clearly contradicted by the footage." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007). But video footage can resolve a factual dispute only when the footage "is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023). Video footage that is incomplete or open to different interpretations creates triable issues of fact. *See Horton*, 883 F.3d at 944.

The video here does not clearly contradict Sorrell's narrative about the scuffle. Cunningham's bodycam footage does not definitively show one way or the other whether Sorrell initiated contact with Cunningham.[3] The footage can reasonably be interpreted to support either of the two versions of the event. Taking the facts in the light most favorable to Sorrell, Sorrell did not knowingly make contact with Cunningham before the seizure, and a jury could conclude that defendants lacked

---

[3] Officer Garcia's arm or hand blocked his bodycam from recording the most important events. [32-1]. Whether Garcia blocked the lens intentionally is not discernible from the record, although at this stage, plaintiff is entitled to inferences in his favor. In any event, Garcia's intent is not material to resolving the motion for summary judgment.

7

probable cause to make an arrest.[4] In the absence of probable cause, summary judgment on the wrongful detention and malicious prosecution[5] claims is inappropriate.

### B. Excessive Force

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. An unreasonable seizure includes one in which a state actor uses unreasonable force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (reasonableness of a seizure depends on how it is carried out).

"[T]he lawfulness of an arrest is irrelevant to an excessive force analysis." *Sebright v. City of Rockford*, 585 F. App'x 905, 907 (7th Cir. 2014). "A seizure without probable cause is conceptually different from a seizure that employs excessive force; both are unreasonable, but for different reasons." *Carlson v. Bukovic*, 621 F.3d 610,

---

[4] While a claim for malicious prosecution under Illinois law concerns whether the officers had probable cause for the specific offense charged (e.g., aggravated battery), a Fourth Amendment claim for wrongful detention can be overcome by the officers showing they had probable cause to arrest Sorrell for *any* offense. *See, e.g.*, *Jackson v. Parker*, 627 F.3d 634, 639 (7th Cir. 2010). Thus, though the video is inconclusive on the offense of battery, it is arguably more definitive on the question of assault. Aggravated assault is defined as knowingly engaging in conduct which places a peace officer (in the performance of his official duties) in reasonable apprehension of receiving a battery. 720 ILCS 5/12-2. If a reasonable officer would perceive Sorrell's reach for the door handle to place the officer—alone in the home with unknown occupants after receiving a call for help with a person known to act violently—in apprehension of receiving a battery, then probable cause existed to seize Sorrell. But like qualified immunity, defendants do not raise the argument and so I do not assess that potential ground for judgment in defendants' favor.

[5] With respect to the malicious prosecution claim, defendants argue that Sorrell has failed to establish any malice by the officers in instituting the proceedings—one of the five elements of the tort under Illinois law. [21] at 6. But as plaintiff points out, malice can be inferred where there is no probable cause. *Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013). Thus, because there is a genuine dispute over the existence of probable cause, Sorrell is "entitled to have a jury determine whether the officers have acted with malice." *Id.*

622 n.19 (7th Cir. 2010). In contrast to a Fourth Amendment claim for wrongful detention, lack of probable cause is not dispositive of reasonableness. *See id.* Instead, excessive force claims must be evaluated under the totality of the circumstances test, as enunciated in *Graham*. *Id.*

*Graham*'s reasonableness test "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). The relevant factors under *Graham* are (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest to attempting to evade arrest by flight. *Id.*

Here, defendants argue that the "handcuffing was straightforward and unremarkable." [21] at 4. The bodycam footage indisputably supports their assertion. [21-2]. Sorrell does not allege that the handcuffs were excessively tight, nor that he notified the officers that the handcuffs were aggravating an existing shoulder injury. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 708 (7th Cir. 2003) (specifying that the use of "excessively tight handcuffs" might constitute excessive force); *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009) (noting that "a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him"). Thus, the amount of force used was relatively minimal.

Although there is a genuine dispute over the seriousness of the offense at issue (and whether Sorrell committed battery at all), and there is no dispute that Sorrell

9

was not resisting arrest, the totality of the circumstances drawing inferences in Sorrell's favor nevertheless establishes that handcuffing was reasonable as a matter of law. Cunningham knew that Sorrell called for help with his son, and that the son had fought with Cunningham before. A reasonable officer in Cunningham's position would know that a call from the Sorrell house presented a potentially volatile situation. Cunningham could also see that Sorrell was angry at Garcia, and that Sorrell reached for the door to prevent Garcia's approach. Assuming Sorrell did not initiate contact with Cunningham, this was still the kind of "tense, uncertain, and rapidly evolving" situation where a split-second judgment allows for the minimal force applied here. *See Graham*, 490 U.S. at 397. Reasonableness is a range, not a point. And while Cunningham and Garcia perhaps could have tried other means to deescalate tensions and assess whether everyone was safe in the home, using handcuffs on Sorrell to stop his movements was reasonable. Defendants are entitled to judgment as a matter of law on the excessive-force claim.

    **C.    Unlawful Entry**

Sorrell admits that, in calling the police, he had consented to officers entering his home. [30] at 5. But, according to Sorrell, his unequivocal revocation of consent required Cunningham to immediately exit his home. [30] at 9–10. Here, there is no dispute of material fact—defendants agree that Sorrell had asked Cunningham to leave his home. [37] ¶ 8. The parties instead disagree over whether exigent circumstances existed which would justify Cunningham remaining in Sorrell's home even in the absence of consent.

It is a "basic principle of Fourth Amendment law" that warrantless searches and seizures inside a home are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). However, because the "ultimate touchstone of the Fourth Amendment" is reasonableness, the warrant requirement is not without exceptions. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Warrantless searches are allowed "when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003). One such exigency is when the police reasonably fear for the safety of someone inside the premises. *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003).

The officers' presence after Sorrell withdrew consent was reasonable under the circumstances. Sorrell does not dispute the seriousness of his son's mental health struggles nor the injuries he has suffered because of them. [32-2] at 29:2–11. Sorrell admits that Cunningham was aware of his son's history of violence. [30] ¶ 10. Sorrell himself made the decision to call the police and seek help because his son was "hostile," "talking crazy," and "making threats of violence." [32-2] at 28:16–22. In light of Sorrell's call to the police and what the officers already knew about his son's history, the officers had an objectively reasonable basis for entering Sorrell's property and remaining there until they had confirmed that the exigency had ended. Indeed, Officer Cunningham repeatedly asked Sorrell's wife if their son needed paramedics even after the scuffle with Sorrell. [31] ¶ 25. *See United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006) (considerations of safety can make a "look-see prudent").

The fact that Sorrell's "son was in plain view" and "sitting silently and peacefully at the top of the steps" when the officers arrived did not negate the exigency. [30] at 12. In contrast to the cases cited by Sorrell, here it was Sorrell himself who had called the police and not some third party. Against this backdrop, where a direct victim reported a potentially violent situation, the officer remained inside the home for about a minute, and the withdrawal of consent was unrelated to the reason for the call for help, only an *unreasonable* police officer would have left the scene without first making sure the other apparent occupants did not need assistance.

For these reasons, I agree with the defendants that the officers were not required to leave immediately after Sorrell withdrew his consent. Summary judgment is granted in favor of all defendants on the unlawful entry claim.

## IV. Conclusion

Defendants' motion for summary judgment, [21], is granted in part, denied in part. Summary judgment is denied on the wrongful detention and state-law malicious prosecution claims. Summary judgment is granted on the excessive force and unlawful entry claims.

ENTER:

Manish S. Shah
United States District Judge

Date: September 23, 2025